UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

      Plaintiff/Respondent,

              CASE NO. 2:08-CR-20385
v.                  2:10-CR-14178
              JUDGE PAUL D. BORMAN
WILLIAM JONES,          MAGISTRATE JUDGE PAUL J. KOMIVES

      Defendant/Movant.
                                     /

**REPORT AND RECOMMENDATION**

I.      RECOMMENDATION: The Court should deny defendant's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 with respect to defendant's sentencing claims, and should order an evidentiary hearing with respect to defendant's claim that counsel was ineffective for failing to file an appeal.

II.     REPORT:

A.     *Procedural Background*

      Defendant/movant William Jones is a federal prisoner, currently confined at the Federal Correctional Institution in Fort Dix, New Jersey. On July 16, 2008, defendant was charged in an Indictment filed on this Court with: (1) attempt to possess with intent to distribute cocaine, 21 U.S.C. §§ 841(a)(1), 846; and (2) two counts of unlawful use of a communication facility, 21 U.S.C. § 843(b). The charges against defendant arose from a reverse sting operation, in which defendant attempted to purchase cocaine from a Drug Enforcement Administration undercover informant and agent. On June 5, 2009, defendant pleaded guilty to all three counts of the Indictment. No plea

1

agreement was entered into by the parties prior to defendant tendering his plea.

In computing the *Booker* advisory guideline sentence,[1] the probation department prepared a presentence report (PSI) assessing a base level offense of 32 with respect to defendant's cocaine conviction, based on his attempt to purchase over 5 kilograms of cocaine. *See* U.S.S.G. § 2D1.1(a)(3), (c)(4). The PSI gave a two point "safety valve" reduction, *see* U.S.S.G. §§ 2D1.1(b)(11), 5C1.2(a), as well as a three point reduction for acceptance of responsibility, *see* U.S.S.G. § 3E1.1, resulting in a total offense level of 27. Defendant filed a motion for a sentencing hearing and a sentencing memorandum, arguing that he should be held responsible only for the 2 kilograms of cocaine that he admitted to attempting to purchase in entering his plea. Defendant further argued that the Court had to find the drug quantity beyond a reasonable doubt. Finally, defendant argued that the Court, in applying the sentencing factors set forth in 18 U.S.C. § 3553(a), should sentence him below the advisory guideline range.

The Court held a sentencing hearing on October 22, 2009, at which the Government presented the testimony of Steven Temprano, the undercover DEA agent involved in the reverse sting. Based on this testimony, the Government argued that defendant attempted to purchase, and thus should be held responsible for, five kilograms of cocaine, subjecting him both to the base offense level of 32 reflected in the PSI and the mandatory minimum 10 year sentence provided for in 21 U.S.C. § 841(b)(1)(A). Defense counsel argued that defendant, at most, had talked about purchasing "about five" kilograms, and that "about five" includes less than five kilograms. Counsel

---

[1] In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that the Sixth Amendment prohibits federal courts from making factual determinations under the United States Sentencing Guidelines which result in the imposition of a Guidelines-mandated sentence. Thus, the Guidelines are now merely advisory, and considered in conjunction with all of the sentencing factors set forth in 18 U.S.C. § 3553(a).

argued therefore that defendant should be held responsible only for the two kilograms that he admitted attempting to purchase in his plea colloquy, resulting in a base offense level of 28. The Court partially accepted defendant's position, explaining:

> I think taking the testimony, the evidence admitted in Exhibit A that it was – and taking the term "about five" as not necessarily being the whole five. I'm going to 30 because I think that the Defendant was looking for up to five but not over that, and so I'll take the offense level as 30 even though there's testimony talking about the five. But in terms of the reality, I think that the likely reality was that he wanted as much as he could get but that he wasn't – so about five. I'll buy that argument, split the difference not for the purpose of moving on but in terms of how I read both the transcript and have heard the testimony that he was looking for at least five – I mean at least 3.5, less than five, even though he at the plea colloquy said two.

Sentence Tr., at 66-67.

The Government then argued that defendant should be assessed two points for his leadership role pursuant to U.S.S.G. § 3B1.1(c). Specifically, the Government argued that defendant's sister, whom he had instructed to bring him money to facilitate the purchase, was a participant, and that petitioner therefore was responsible for directing her in the crime. Defense counsel argued that defendant's sister was not a participant, and that a two level increase under § 3B1.1(c) was therefore inappropriate. The Court accepted the Government's argument and assigned two points under § 3B1.1(c), which also had the effect of making defendant ineligible for the § 5C1.2 safety-valve reduction pursuant to U.S.S.G. § 5C1.2(a)(4). *See* Sentence Tr., at 71-74. These adjustments resulted in a total offense level of 29, providing a guideline range of 87-108 months. *See id*. at 75. The Court also rejected the Government's argument that the PSI understated defendant's criminal history. *See id*.

Defense counsel asked the court to depart from the advisory guidelines sentence, arguing that the conduct of defendant was aberrant, and that defendant had strong family ties and good character.

3

*See id*. at 77. Defendant also provided an extensive allocution. *See id*. at 78-82. The Government responded that the evidence showed that defendant was a drug dealer, and that this was not aberrant behavior. The Government also pointed to defendant's extensive criminal history. *See id*. at 82-84. After hearing the parties' arguments, the Court found that defendant was entitled to a two-level variance based on the loss of the two-level safety valve reduction as a result of defendant's leadership role, a loss which the Court concluded "creates a sentence that is greater than necessary to comply with the purposes [of sentencing]." *Id*. at 87. This resulted in an adjusted base offense level of 27, with a resulting guideline range of 70-87 months. *See id.* Based on the offense and the "[h]istory and characteristics of the Defendant," including a pending attempted first degree murder charge in Pennsylvania, the Court sentenced petitioner to 80 months' imprisonment on the cocaine conviction, and to concurrent terms of 48 months' imprisonment on the communication device convictions. *See id*.

At the conclusion of the sentencing hearing, the Court advised defendant that he had a right to appeal, but that any appeal must be filed within 10 days of the date of sentencing. The Court advised defendant that he should consult with counsel regarding the desirability of an appeal, and that the Court would appoint counsel for him if he could not afford an attorney. Defendant indicated that he understood his appellate rights. *See id*. at 89-90. Defendant did not file an appeal from his conviction or sentence.

On April 13, 2010, a motion to vacate defendant's sentence pursuant to 28 U.S.C. § 2255 was filed. Defendant subsequently filed a motion to withdraw this § 2255 motion, arguing that it had been filed by a third party without his consent. That motion was granted on July 9, 2010. On October 18, 2010, defendant filed a new motion to vacate pursuant to § 2255. In this motion,

defendant challenges his sentence on two grounds. Specifically, defendant argues that (1) the record did not support the two-level leadership enhancement under § 3B1.1, and (2) his subsequent acquittal of the Pennsylvania attempted murder charge requires resentencing. Defendant also argues that his counsel was ineffective for failing to file an appeal. The Government filed a response on December 30, 2010. The Government, relying on an affidavit filed by petitioner's trial counsel, argues that counsel was not ineffective for failing to file an appeal because defendant instructed counsel not to file an appeal. The Government also argues that: (1) defendant's guidelines claim is not cognizable in a § 2255 motion; (2) to the extent defendant argues counsel was ineffective with respect to the leadership role issue, the claim is without merit; and (3) defendant's acquittal on the Pennsylvania charge does not warrant resentencing. With respect to defendant's claim that counsel was ineffective for failing to file an appeal, the Government argues that the claim is without merit. In support of this argument, the Government attaches the affidavit of defendant's trial counsel. Defendant filed a reply on March 31, 2011, to which he attaches his own declaration.

B.   *Legal Standard*

The substantive provisions of § 2255, which were not altered by the Antiterrorism and Effective Death Penalty Act of 1996, provide that a federal prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255(a). Thus, a defendant may be entitled to § 2255 relief if his conviction or sentence violates either the Constitution or a federal statute. However, in order to obtain relief under § 2255 on the basis of a nonconstitutional–*i.e.*, statutory or rule–error, the record must reflect a fundamental defect in the proceedings which inherently causes a miscarriage of justice

or an omission inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 348 (1994) (Ginsburg, J.); *id.* at 355-56 (Scalia, J.); *United States v. Todaro*, 982 F.2d 1025, 1028 (6th Cir. 1993) (per curiam). As the Seventh Circuit has explained:

> Where "mere statutory violations are at issue," . . . the Supreme Court has recently held that § 2255 can only avail a petitioner if the alleged error spawned a "'fundamental defect which inherently results in a complete miscarriage of justice.'" Federal courts lack the power under § 2255 to rectify errors that fall short of "vitiat[ing] the sentencing court's jurisdiction or are otherwise of constitutional magnitude."

*Broadway v. United States*, 104 F.3d 901, 903 (7th Cir. 1997) (quoting, respectively, *Reed*, 512 U.S. at 348 (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)) (citations omitted), and *Guinan v. United States*, 6 F.3d 468, 470 (7th Cir. 1993)) (citations omitted) (alteration in original).

C.   *Ineffective Assistance of Counsel Claim*

Defendant first contends that his trial counsel was ineffective for not filing an appeal to challenge the leadership role enhancement imposed by the Court at sentencing. The Government argues that this claim is without merit, because defendant did not desire to appeal after consulting with counsel. In support of this argument, the Government relies on the affidavit of defendant's trial counsel, Joseph A. Niskar, who in relevant part avers:

> The trial court's Judgment and Sentence was extensively discussed with Mr. Jones both in court and after court in the Marshall's [sic] lock-up with Co-Counsel, Daniel J. Schouman. Additionally, myself, co-counsel, and the trial court advised Mr. Jones of his right to appeal within 10 days of the Judgment of Conviction being entered by the court. Moreover, since the Court's sentence was ultimately below the advisory guideline range, and the government indicated an intent to file an appeal, Mr. Jones instructed each of his counsel that he did not wish to appeal the Judgment of Conviction, either within 10 days or at any time in the future.

Gov't's Resp., Aff. of Joseph A. Niskar, ¶ 8. In reply, defendant relies upon his own declaration, in which he avers that: (1) counsel informed him, after the Court ruled on the leadership role issue,

that "the Judge's ruling was 'wrong' and that we would 'appeal,'" Reply Br., Decl. of William Jones, ¶ 4; (2) he never met with co-counsel Schouman, *see id.*, ¶¶ 8-10; (3) counsel never informed him about any appeal contemplated by the Government, *see id.*, ¶ 12; (4) he never told counsel that he did not want to file an appeal, *see id.*, ¶ 14; and (5) he believed that counsel had filed an appeal challenging the leadership role enhancement, *see id.*, ¶ 15.

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id.* at 687. These two components are mixed questions of law and fact. *Id.* at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

Where a defendant claims that counsel failed to file an appeal, the performance inquiry depends both on what defendant told counsel and on the circumstances of the case. In *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), the Court explained that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Id.* at 477. Conversely, "a defendant who explicitly tells his attorney *not* to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently." *Id.* In the middle ground–that is, in cases in which "the defendant has not clearly conveyed his wishes

7

one way or the other," *id*.–the Court explained that

> the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal. We employ the term "consult" to convey a specific meaning-advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes. If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal. If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance.

*Id*. at 478. The Court further explained that although counsel should ordinarily directly consult a defendant about an appeal, "we cannot say, as a *constitutional* matter, that in every case counsel's failure to consult with the defendant about an appeal is necessarily unreasonable, and therefore deficient." *Id*. at 479. Rather, the Court held "that counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id*. at 480.

With respect to prejudice, the defendant need not show prejudice in the sense of having a potentially meritorious appellate claim, *see Roe v. Flores-Ortega*, 528 U.S. 470, 486 (2000). However, he must still show prejudice in the sense that "counsel's deficient performance . . . actually cause[d] the forfeiture of the defendant's appeal." *Id*. at 484. "If the defendant cannot demonstrate that, but for counsel's deficient performance, he would [not have lost his appeal], counsel's deficient performance has not deprived him of anything, and he is not entitled to relief." As the Court observed, under this standard "the prejudice inquiry . . . is not wholly dissimilar from

8

the inquiry used to determine whether counsel performed deficiently in the first place." *Id*. at 486.

Here, the parties have presented conflicting affidavits necessitating an evidentiary hearing. In his declaration, defendant avers that he never told counsel he did not desire an appeal, that counsel never discussed with him the possibility of an appeal by the government, and that after the Court's ruling on the leadership role issue counsel told him that they would appeal that issue. If this is true, defendant would be entitled to relief, as "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe*, 528 U.S. at 477. On the contrary, the affidavit of trial counsel filed by the government avers that counsel and defendant explicitly discussed his appellate options, and that defendant in consultation with counsel decided not to seek an appeal. If this version of events is true, defendant is not entitled to relief, as "a defendant who explicitly tells his attorney *not* to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently." *Id*.

Under § 2255, a "hearing is mandatory 'unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003) (quoting *Fontaine v. United States*, 411 U.S. 213, 215 (1973)). Unlike a habeas petition challenging a state conviction under § 2254, with respect to which there are significant barriers to receiving an evidentiary hearing, *see* 28 U.S.C. § 2254(e), "a Section 2255 petitioner's burden 'for establishing entitlement to an evidentiary hearing is relatively light.'" *Smith*, 348 F.3d at 551 (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)). In particular, "where the ultimate resolution rests on a credibility determination, an evidentiary hearing is especially warranted." *United States v. White*, 366 F.3d 291, 302 (4th Cir. 2004); *see also*, *Smith*, 348 F.3d at 551 (quoting *Turner*, 183 F.3d at 477) ((""[W]here there is a factual dispute, the habeas

court must hold an evidentiary hearing to determine the truth of the petitioner's claims.'"). Because the parties have submitted conflicting affidavits regarding whether defendant instructed counsel to either file or not file an appeal, and because the resolution of this factual dispute is determinative of defendant's claim, the Court must hold an evidentiary hearing. *See Cunningham v. United States*, 378 Fed. Appx. 955, 958-59 (11th Cir. 2010); *Wright v. United States*, 320 Fed. Appx. 421, 427 (6th Cir. 2009); *United States v. Moore*, 204 Fed. Appx. 250, 251 (4th Cir. 2006); *United States v. Sandoval-Lopez*, 409 F.3d 1193, 1198 (9th Cir. 2005).

If the Court accepts this recommendation, the Court must appoint counsel to represent defendant at the evidentiary hearing. *See* Rule 8(c), Rules Governing Section 2255 Proceedings for the United States District Courts, 28 U.S.C. foll. § 2255. Further, the Court may conduct the hearing itself or refer the matter to me for that purpose. *See* Rule 8(b), 28 U.S.C. foll. § 2255. Finally, because defendant is incarcerated in New Jersey, the Court may ask the parties to arrange for defendant's appearance via video conferencing. *See, e.g.*, *Samuels v. United States*, No. 3:08-cr-00005, 2010 WL 7444538, at *1 (W.D. Va. Oct. 21, 2010); *Burksted v. United States*, No. V-04-19-1, 2008 WL 2778944, at *2 (S.D. Tex. July 15, 2008); *Williams v. United States*, No. 1:04 CR 329, 2007 WL 1795993, at *4 (N.D. Ohio June 20, 2007).

D.   *Sentencing Claims*

Although defendant is entitled to an evidentiary hearing with respect to his ineffective assistance of counsel claim, the Court should conclude that he is entitled to neither a hearing nor relief with respect to his sentencing claims.

1.   *Section 3B1.1(c)*

Defendant first contends that the Court erred in assigning him 2 points under the Sentencing

Guidelines based on his leadership role pursuant to U.S.S.G. § 3B1.1(c). As explained above, however, relief for nonconstitutional errors under § 2255 is limited to errors which affect the fundamental fairness of the defendant's conviction and sentence. *See Reed*, 512 U.S. at 348. Thus, "an error in the application of the Sentencing Guidelines does not warrant collateral relief under § 2255 absent a complete miscarriage of justice." *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999); *see also*, *Eaddy v. United States*, 20 Fed. Appx. 463, 464 (6th Cir. 2001); *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996). Here, even if the Court misapplied § 3B1.1, defendant cannot show that the Court's error resulted in a complete miscarriage of justice. Because the Court granted defendant a two-point variance to account for the loss of the safety-valve decrease, the only effect of the Court's alleged misapplication of § 3B1.1 was to increase defendant's adjusted offense level by two points. The effect of the trial court finding § 3B1.1(c) inapplicable would have been to place defendant at a total offense level of 27, with a resulting sentencing range of 70-87 months, the precise range in which the Court actually sentenced defendant by granting the two point variance. Thus defendant cannot show that, even if the Court improperly scored § 3B1.1(c), this mis-scoring resulted in a fundamental miscarriage of justice. Nor can defendant show that counsel was ineffective in connection with the scoring of this role in the offense variable. Counsel vigorously contested the applicability of the leadership role scoring, and defendant does not suggest any further arguments or strategies counsel may have employed.

    2.    *Pending State Charges*

Likewise, defendant is not entitled to a new sentence based on his acquittal of the Pennsylvania murder charges. In imposing sentence, the Court explicitly recognized that defendant was "presumed innocent of" these charges and stated that it would "not assume that he's guilty of

them." Sentence Tr., at 86. And the Government did not argue that the Court's sentence should be based on the fact of the alleged crime, but rather on the fact that, while he was on bond facing the Pennsylvania charges, he committed the crimes for which he was convicted in this Court. As the Government explained, defendant's commission of the instant offenses while on bond awaiting trial on different charges was "not the behavior of a remorseful individual who, if he only gets mercy from the Court this one time, is never going to be in front of any Court again." *Id.* at 84. In other words, it was defendant's conduct while facing the Pennsylvania charges, rather than the validity of the charges themselves, which affected the Court's sentence. Defendant's commission of the instant offenses while on bond was a relevant factor for the Court to consider in imposing sentence, *see United States v. Chaviano*, 322 Fed. Appx. 722, 723 (11th Cir. 2009), and nothing in defendant's subsequent acquittal of those charges changes the fact that he committed the instant offenses while on bond facing those state court charges.[2] Because defendant's guilt or innocence on the pending Pennsylvania charges did not affect the Court's sentence, his subsequent acquittal provides no basis for resentencing. *Cf. United States v. Merlino*, 2 F. Supp. 2d 647, 652-53 (E.D. Pa. 1997). *See generally*, *United States v. Madison*, 689 F.2d 1300, 1313 (7th Cir. 1982) ("Knowledge of a pending charge does not render a sentence invalid, especially where, as here, the trial judge does not express any opinion or consideration as to the guilt or innocence of the defendant on the pending charge."). Accordingly, the Court should conclude that defendant is not entitled to relief on this claim.

E.  *Conclusion*

---

[2]Indeed, a defendant who commits a felony offense while released on bond with respect to a pending federal offense is subject to a mandatory minimum enhancement of 10 years' imprisonment, *see* 18 U.S.C. § 3147, and this enhancement applies even if the defendant is acquitted of the initial offense for which he had been placed on bond. *See United States v. Davis*, 114 F.3d 400, 403 (2d Cir. 1997).

In view of the foregoing, the Court should conclude that defendant has not established his entitlement to relief under § 2255 on his sentencing claims, but that defendant is entitled to an evidentiary hearing on his claim that counsel was ineffective for failing to file an appeal. Accordingly, the Court should order an evidentiary hearing with respect to that claim, appoint counsel for defendant, and either conduct an evidentiary hearing or refer the matter to me for that purpose.[3]

### III. NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the

---

[3] A petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts, 28 U.S.C. foll. § 2255, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2255. Because the Court's acceptance of the recommendation made in this Report will not result in a final order adverse to defendant, I do not make any recommendation regarding a certificate of appealability at this time.

opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                            s/Paul J. Komives
                                            PAUL J. KOMIVES
                                            UNITED STATES MAGISTRATE JUDGE

Dated: 5/9/11

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and by electronic means or U.S. Mail on May 9, 2011.
>
>                                   s/Eddrey Butts
>                                   Case Manager